UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

SAVVA'S RESTAURANT, INC.,                          Case No.: 22-70382-reg
*dba* HARVEST DINER,
                                                                                  Chapter 11
                                          Debtor.
-------------------------------------------------------------------x
SAVVA'S RESTAURANT, INC., and SAVVA'S
BROTHERS RESTAURANT INC.

                                Plaintiffs,                Adv. Pro. No.: 22-08041-reg
                - against -

KB INSURANCE CO., LTD.
*dba* KOOKMIN BEST INSURANCE CO., LTD.,

                                Defendant.
-------------------------------------------------------------------x

**DECISION**

        Before the Court are cross-motions for summary judgment involving an insurance claim by the Debtor, Savva's Restaurant, Inc. (the "Debtor"), and an affiliated entity (together "Plaintiffs"), against the Debtor's insurer, Defendant, KB Insurance Co., Ltd. *dba* Kookmin Best Insurance Co., Ltd. ("KBIC"), resulting from the total destruction of the Debtor's business, the Harvest Diner, in a fire. Shortly after the fire, KBIC denied coverage to both the Debtor and TD Bank, N.A. ("TD Bank"), which was the mortgagee and loss payee under the policy. Separately, both the Debtor and TD Bank commenced actions against KBIC seeking declaratory judgment and other relief to require KBIC to provide coverage for their loss.

        The instant matter relates to the Debtor's claims against KBIC. Here, KBIC argues that it properly rescinded the policy as to the Debtor due to alleged misrepresentations in the application for insurance. The Debtor argues that KBIC's rescission was improper, and the

policy remains in full force and effect because it did not make any misrepresentations in the insurance application; rather the Debtor provided what it believed to be accurate answers in response to ambiguous questions in the application. The Debtor also argues that the alleged misrepresentations were not material to KBIC's decision to write the policy. For the reasons that follow, the Court finds that the Debtor's responses to certain questions on the insurance application were false and material to KBIC's decision to issue the policy, and as a result, KBIC properly rescinded the policy as to the Debtor.

*Facts*

On or about May 3, 2004, the Debtor and an affiliate, Savva's Brothers Restaurant Inc. ("SBRI"),[1] jointly borrowed $2,800,000 from TD Bank's predecessor-in-interest, Commerce Bank N.A., evidenced by a note (the "Loan"), and secured by a mortgage (the "Mortgage") on the Debtor's commercial real property and the improvements thereon located at 841 Old Country Road, Westbury, New York (the "Property"). The Debtor operated the Harvest Diner at the Property. The Mortgage required the Debtor to maintain fire insurance and name TD Bank as loss payee.

The Debtor defaulted on the Loan and TD Bank commenced foreclosure proceedings in 2011. Index No. 016865/2011, Supreme Court, Nassau County. Also, on July 1, 2010, a tax lien was placed on the Property by Nassau County. Pls.' Suppl. Mem. of Law in Further Supp. of Mot. for Summ. J., ECF No. 35, ¶14.[2] The tax lien was sold to L&L Associates ("L&L") on

---

[1]    SBRI is a New Jersey corporation owned by the Debtor's principal's brother. SBRI is not a debtor before this Court. SBRI is a co-plaintiff, with the Debtor, in this litigation.

[2]    Unless otherwise noted, all ECF references in this Decision are to docket entries in this adversary proceeding. Adv. Proc. No. 22-8041.

February 15, 2011, and ultimately a deed was conveyed to L&L. *Id.* Facing mortgage and tax lien foreclosures, the Debtor filed a petition under chapter 11 on September 16, 2013 ("First Bankruptcy") (Bankr. E.D.N.Y., Case No. 13-74774). A chapter 11 plan was confirmed on October 13, 2014, the final decree was entered, and the First Bankruptcy was closed on February 10, 2015.[3]

The Debtor purchased property insurance from AmTrust North America Financial Company ("AmTrust") for the period December 17, 2015 through December 17, 2016. According to AmTrust, that policy was not renewed because AmTrust ceased writing policies for "restaurant[s] operation [sic] with liquor sales open after 1am." Def.'s Mot. for Summ. J., ECF No. 26, Ex. K. The Debtor then obtained insurance from Harleysville Preferred Insurance Company (a Nationwide insurance company) ("Nationwide") for the period December 17, 2016 through December 17, 2017. The Nationwide policy was not renewed because the "[t]otal insured Value is over $1.5 million and is not sprinklered." Def.'s Mot. for Summ. J., ECF No. 26, Ex. L. The Debtor then applied for insurance from Guard Berkshire Hathaway Insurance ("Guard") and was declined "due to the unfavorable financial condition of the applicant." Def.'s Mot. for Summ. J., ECF No. 26, Ex. M.

The Debtor applied for commercial insurance with KBIC on November 13, 2017 through its insurance broker, Loizos Prodromou ("Prodromou"). Pls.' Mot. for Summ. J., ECF No. 27, Pls.' Statement of Undisputed Material Facts, at 3-4. Prodromou had been the Debtor's insurance broker since 2007. Pls.' Mot. for Summ. J., ECF No. 27, Ex. 16, at 21. Prodromou filled out the

---

[3] TD Bank commenced a second foreclosure action against the Debtor and SBRI in 2018. Index No. 615613/2018, Supreme Court, Nassau County. That action was stayed by the filing of the instant chapter 11 proceeding.

KBIC insurance application with answers provided by the Debtor's principal, Kyriacos Savva ("Mr. Savva"). Pls.' Mot. for Summ. J., ECF No. 27, Pls.' Statement of Undisputed Material Facts, at 5. Prodromou read the questions to Mr. Savva, as they appeared on the application. *Id.* Question 10 on the Acord application (a standard application in the insurance industry) asked whether there were "[a]ny bankruptcies, tax or credit liens against the [Debtor] in the past five years?", *i.e.*, since November 13, 2012. Def.'s Mot. for Summ. J., ECF No. 26, Ex. H. The answer reflected on the insurance application was "no." *Id.* Question 6 on the Acord application asked whether the Debtor had any policy or coverage declined, canceled, or non-renewed during the prior three years, *i.e.*, since November 13, 2014. *Id.* The answer reflected on the insurance application was "no." *Id.*

Relying on the responses to the questions contained in the application, KBIC issued a Commercial Package Policy ("Policy") to the Debtor on the Property effective December 17, 2017. The Policy was renewed for one year in December 2018. The Policy insured against property damage, including fire damage, and named TD Bank as mortgagee and loss payee.

On September 26, 2019, a fire at the Property resulted in total destruction of the premises which had to be demolished and was not rebuilt. The Debtor notified KBIC of the fire and resulting loss and filed a claim with KBIC. By letter dated March 3, 2020, KBIC's counsel wrote to the Debtor explaining that KBIC was rescinding the Policy based upon alleged misrepresentations by the Debtor in the insurance application ("Notice of Rescission"). Def.'s Mot. for Summ. J., ECF No. 26, Ex. P. Specifically, the Notice of Rescission cited to the Debtor's misrepresentation that it was neither involved in a bankruptcy proceeding nor had a tax lien against it within the preceding five years. *Id.* The Notice of Rescission did not mention that the Debtor also had a policy denied and/or non-renewed in the prior three (3) years. *Id.*

*Procedural History*

On March 20, 2020, TD Bank filed a verified complaint in New York State Supreme Court, Nassau County ("State Court") against KBIC, the Debtor, and others seeking to enforce the Policy and for further damages against KBIC for its alleged bad faith denial of coverage. Supreme Court, Nassau County, Index No. 604392/2020 ("TD Bank Action"). On June 11, 2020, the Plaintiffs filed a verified complaint in State Court seeking payment of its insurance claim and other further damages and relief against KBIC. Supreme Court, Nassau County, Index No. 605713/2020 ("Debtor Action"). KBIC asserted counterclaims for rescission in both actions.

The Debtor Action and TD Bank Action were joined for discovery and trial in State Court. Cross motions for summary judgment were pending in both cases when, on March 4, 2022, the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to Rule 9027(a)(2) of the Federal Rules of Bankruptcy Procedure, both the instant Debtor Action (Adv. Proc. No. 22-8041) and the TD Bank Action (Adv. Proc No. 22-8040) were removed to this Court on May 23 and May 20, 2022, respectively.

On June 20, 2022, KBIC filed a motion to remand both lawsuits back to State Court. Mot. for Remand, ECF No. 15. The motions to remand were denied without prejudice. This Court's order provided that, in the event that the adversary proceedings were not decided on summary judgment and a trial is necessary, the Court would revisit KBIC's motions to remand. Order Den. Mot. for Remand without Prejudice, ECF No. 25.

The cross-motions for summary judgment, which had been pending in State Court at the time of the Debtor's bankruptcy filing, were updated and brought before this Court for decision. A hearing on the motions was held on March 28, 2023, and the matters were marked submitted.

This following analysis and decision relate only to the summary judgment motions in the Debtor Action.

## DISCUSSION

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056(a).[4] The Court is not to weigh the evidence; rather the Court must determine whether a genuine issue exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

KBIC argues that it is entitled to judgment declaring the policy void *ab initio* as a matter of law because it issued the original policy and the extension to the Debtor in reliance upon false statements made by the Debtor in the application. Def.'s Mot. for Summ. J., ECF No. 26. KBIC's argument is based on the allegation that the Debtor misrepresented that it: (i) did not have any bankruptcies in the preceding five years; (ii) did not have tax liens in the preceding five years; and (iii) had not had policy coverage declined, canceled, or non-renewed during the preceding three years. *Id.*

To establish the right to rescind an insurance policy, an insurer must demonstrate that the insured made a material misrepresentation in the insurance application. *Zilkha v. Mut. Life Ins. Co. of New York*, 732 N.Y.S.2d 51, 52 (App. Div. 2d Dep't 2001). A misrepresentation may

---

[4]     Although the motions originally were pending in state court under New York procedural rules, the Federal Rules of Bankruptcy Procedure apply here. *See New York Internet Co., Inc. v. JobDiva Inc (In re New York Internet Co., Inc.)*, Case No. 17-10326 (SHL), Adv. Proc. No. 17-01045 (SHL), 2018 WL 1792235, at *3 (Bankr. S.D.N.Y. Apr. 13, 2018) (finding federal procedural rules apply in a removed action as though the action was originally commended in federal court).

consist of an affirmative false statement or an omission. *Mut. Ben. Life Ins. Co. v. Morley*, 722 F. Supp. 1048 (S.D.N.Y. 1989) (citations omitted).

### *Was Question 10 of the insurance application ambiguous?*

"An answer to an ambiguous question on an application for insurance cannot be the basis of a claim of misrepresentation by the insurance company against its insured where…a reasonable person in the insured's position could rationally have interpreted the question as he or she did." *Garcia v. Am. General Life Ins. Co. of New York*, 695 N.Y.S.2d 420, 421 (App. Div. 2d Dep't 1999). Ambiguous language should be construed against the drafter, and an insurance company should be held to a strict standard when it is endeavoring to avoid payment on its policy because of answers to inquiries that it framed. *Id.* (citations omitted). "However, parties cannot create ambiguity from whole cloth where none exists, because provisions 'are not ambiguous merely because the parties interpret them differently.' . . . Rather, 'the test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech.'" *Baron v. New York Mut. Underwriters*, 121 N.Y.S.3d 120, 123 (App. Div. 2d Dep't 2020) (citations omitted).

The Plaintiffs argue KBIC's rescission was improper because Question 10 on the insurance application is ambiguous. Pls.' Mot. for Summ. J., ECF No. 27. The question asks whether there were "any bankruptcies or tax liens against the applicant in the past 5 years." Pls.' Mot. for Summ. J., ECF No. 27, Ex. 5. Mr. Savva testified that he was confused as to the intended meaning of the phrase "against the applicant" and thought the question was only asking about an involuntary, not a voluntary, bankruptcy. Pls.' Mot. for Summ. J., ECF No. 27, Ex. 13, at 94-97. The Debtor's insurance broker, Prodromou, also claimed that Question 10 is ambiguous

as it is unclear whether it referred to a prior voluntary or involuntary bankruptcy. Def.'s Mot. for Summ. J., ECF No. 26, Ex. G, at 128.

The Court rejects the Debtor's argument that Question 10 is ambiguous because it does not distinguish between voluntary and involuntary bankruptcies, or bankruptcies filed "by" or "against" the applicant. The insurance application used by KBIC was a standard application used in the industry. It strains credulity that the Debtor would think that the application only asked if it was placed in bankruptcy involuntarily as opposed to placing itself in bankruptcy voluntarily. *See CT Investment Mgmt. Co., LLC v. Chartis Specialty Ins. Co.*, 9 N.Y.S.3d 220, 224 (App. Div. 1st Dep't 2015) (rejecting overly narrow interpretation of the term "bankruptcy" in insurance policy and finding the term was not ambiguous merely because it was subject to conflicting interpretations). The Court will not find that a reasonable person in the Debtor's position could rationally have interpreted Question 10 to be asking only about prior involuntary bankruptcies.

Deposition testimony by Mr. Savva and the Debtor's insurance broker belie the Debtor's argument that the question is ambiguous. Mr. Savva admitted at an examination under oath that the answer to Question 10 was inaccurate but explained that it was probably wrong because the broker filled it out. Def.'s Mot. For Summ. J., ECF No. 26, Ex. R, at 74. Prodromou testified at deposition that he did not know about the First Bankruptcy and relied on Mr. Savva to answer Question 10. Def.'s Mot. for Summ. J., ECF No. 26, Ex. G, at 62-63. He also testified that, if he had known about the First Bankruptcy, he would have answered "yes" to Question 10. *Id.* The Court finds that Question 10 was not ambiguous.

***Was the information provided to KBIC on the insurance application misrepresented?***

The Plaintiffs also argue that the First Bankruptcy and tax lien fell outside of the five-year look back period as set forth in Question 10. The First Bankruptcy was filed on September 16, 2013. The Plaintiffs argue that although this is within five years prior to the original insurance application date, it was more than five years prior to the December 2018 renewal date. As for the tax lien, the Plaintiffs argue that it was issued on February 15, 2011, which was outside the five-year look back period contained in Question 10. With respect to the tax lien, the Debtor also argues that Question 10 only asked if there were any tax liens filed against the Debtor, not whether there were any tax liens filed against real property owned by the Debtor. Therefore, they argue the answer to Question 10 regarding tax liens was not a misrepresentation.

"A representation is a statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false." N.Y. Ins. Law § 3105(a).

First, the Court finds that the Debtor's answer to Question 10 of the insurance application regarding prior bankruptcy filings within the previous five years was false. The application was dated November 13, 2017. The First Bankruptcy was commenced on September 16, 2013 and was closed on February 10, 2015. Clearly the First Bankruptcy was commenced and pending during the five years preceding the insurance application. The Court rejects the Debtor's argument that the five-year reach back period should be measured from the renewal date in December 2018. The record does not reflect that the Debtor was given a new insurance

application and questionnaire in 2018 and it appears that KBIC relied on the representations made in the original application when determining whether to issue and then renew the Policy.

In response to Question 10, the Debtor also represented that there were no tax liens against the Debtor in the preceding five years. A tax lien against the Debtor's property was purchased on February 15, 2011 by L&L. Were this the only relevant date, the tax lien would be outside the five-year reach back period as the insurance application was dated November 13, 2017. However, the tax lien remained on the Property until August 19, 2013 when the Nassau County Treasurer transferred the deed to the Debtor's Property to L&L. Pls.' Mot. for Summ. J., ECF No. 27, Ex. 4. Mr. Savva specifically testified that he filed the First Bankruptcy, in 2013, because of the tax lien. Pls.' Mot. For Summ. J., ECF No. 27, Ex. 13, at 57. Clearly, there was a tax lien on the Debtor's Property within the five-year reach back period contemplated by Question 10, and clearly Mr. Savva knew about it.

Finally, Question 6 of the insurance application asked whether there was "[a]ny policy or coverage declined, cancelled or non-renewed during the prior 3 years?" Pls.' Mot. for Summ. J., ECF No. 27, Ex. 5. The Debtor's AmTrust policy was not renewed in 2016. Its Nationwide policy was not renewed in 2017, and the Debtor was denied coverage by Guard in 2017. The Debtor's answer to Question 6 in the negative was a clear misrepresentation.

### *Were the Debtor's misrepresentations material?*

"No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." N.Y. Ins. Law § 3105(b)(1). An insurance policy issued in

reliance upon a material misrepresentation is void *ab initio*, meaning it is as if the policy never came into existence, and an insured cannot create coverage by relying on the terms of a policy that never existed. *Taradena v. Nationwide Mut. Ins. Co.*, 659 N.Y.S.2d 646, 647 (App. Div. 4th Dep't 1997). An insurer can establish materiality as a matter of law by presenting "clear and substantially uncontradicted" documentation concerning its underwriting practices—such as manuals, rules or bulletins—that establish that it would not have issued the same policy if the correct information had been disclosed. *Nabatov v. Union Mut. Fire Ins. Co.,* 164 N.Y.S.3d 667, 669-70 (App. Div. 2d Dep't 2022); *see also Caldara v. Utica Mut. Ins. Co.*, 15 N.Y.S.3d 346, 348 (App. Div. 2d Dep't 2015). A conclusory statement by an insurance company employee that the company would not have issued the policy had it known the facts allegedly misrepresented is, in and of itself, insufficient to establish that the misrepresentation was material. *Tuminelli v. First Unum Life Ins. Co.*, 648 N.Y.S.2d 967, 967 (App. Div. 2d Dep't 1996).

KBIC's underwriting guidelines demonstrate that KBIC may not have issued the Policy had it been aware that the Debtor filed the First Bankruptcy. KBIC's bankruptcy guidelines, excerpted in pleadings filed with this Court, provide that risks involved in bankruptcy proceedings require additional information and managerial review. Def.'s Mot. for Summ. J., ECF No. 26, Statement of Undisputed Material Facts, ¶ 36.[5] The guidelines state that KBIC will not "write risks that are involved in Chapter 7 or 13 Bankruptcy." *Id.* It also states that KBIC "may" consider risks involved in a chapter 11 bankruptcy, but "[a]ll risks involved in bankruptcy proceedings must be referred to Management with the following information: Names of all principals involved in risks; Name of appointed receiver; Financial Statement; How long the risk

---

[5]     KBIC's complete underwriting guidelines were submitted to this Court for *in camera* review only.

has been involved in bankruptcy proceedings; Re-organization plan, including the time frame for emerging from bankruptcy protection." *Id.*

Alma Ma ("Ma"), a senior claims analyst for KBIC, was involved in processing the insurance claim that resulted from the fire. Pls.' Mot. for Summ. J., ECF No. 27, Ex. 14, at 11-12. Upon investigating the claim, she discovered that the Debtor had previously filed for bankruptcy in 2013. *Id.* at 47. Ma emailed her supervisor asking whether KBIC would accept the risk of an applicant who had filed for bankruptcy within the past five years. *Id.* at 42-44. Her supervisor responded that they would not write such a risk and attached KBIC's eligibility guidelines. *Id.* at 44. Sunny Lee ("Lee"), a senior underwriter for KBIC, testified that the underwriters refer to KBIC's eligibility guidelines when determining whether to issue an insurance policy. Def.'s Mot. for Summ. J., ECF No. 26, Lee Aff, ¶6. Lee averred that he would have viewed the bankruptcy as unfavorable financially. *Id.* ¶17. Another underwriter, Yoon Lee, testified that if the bankruptcy and tax lien are resolved pursuant to a reorganization plan (as they were here), the policy could be writable upon further review. Pls.' Mot. for Summ. J., ECF No. 27, Ex. 15, at 78-81.

Under KBIC's bankruptcy guidelines, an applicant involved in a chapter 11 proceeding must provide KBIC with significant additional information, including financial statements and the plan of reorganization, and the application must be approved by management. KBIC's guidelines as to prior bankruptcy filings clearly demonstrate that that information was material to KBIC's decision to write the risk, or not, and on what terms the risk would be written. KBIC was denied the ability to review this information as part of its assessment of the risk because KBIC did not learn about the Debtor's First Bankruptcy until after the Policy was issued. The bankruptcy guidelines and KBIC's underwriters' sworn statements show that KBIC relied on the

answers in the insurance application and would not have issued the Policy, or at the very least not have written the Policy on the same terms. Plaintiffs' only response—*i.e.*, that the guidelines do not explicitly preclude writing the risk if the Debtor had a prior chapter 11 bankruptcy—is unpersuasive and ignores the fact that the policy may have been declined or written on substantially different terms had the Debtor answered the question truthfully.

Based on all of the foregoing, the Court finds that KBIC was entitled to rescind the Policy based on the Debtor's material misrepresentation in response to Question 10 of the insurance application regarding the First Bankruptcy. *See e.g., Am. Safety Indem. Co. v. Fairfield Shopping Ctr., LLC*, No. 2:12-CV-02415-SGC, 2016 WL 3878496 (N.D. Ala. July 18, 2016) (finding misrepresentation as to bankruptcy filing was material as a matter of law).

As for Question 6, Plaintiffs argue that any prior denials, non-renewals or cancellations are of no consequence because KBIC failed to submit proof of its underwriting with respect to applicants with similar histories as the insured, and KBIC's only argument with respect to their underwriting of prior denials, non-renewals or cancellations consists of conclusory, post-hoc statements from their employees regarding materiality. Pls.' Suppl. Mem. of Law in Further Supp. of Mot. for Summ. J., ECF No. 35, ¶17.

The Court finds that the Debtor's misrepresentation in Question 6 was material as a matter of law. *Cf. Orum v. Liberty Ins. Corp.*, No. 5:17-CV-142, 2019 WL 6493930, at * 6 (N.D. W. Va. Dec. 3, 2019) (citing *Gouge v. Penn Am. Ins. Co*, No. CIV.A. 2:04-1083, 2005 WL 1639291, at *6 (S.D. W. Va. July 12, 2005)) ("It is difficult for one to imagine a fact more material…than that other potential providers had previously declined coverage.") (internal quotation marks omitted); *Wezorek v. Allstate Ins. Co.*, No. 06-CV-1031, 2007 WL 2264096, at *12 (E.D. Pa. Aug. 7, 2007) (finding policy was properly voided *ab initio* where insurer relied on

misrepresentations concerning previous policy cancellations among other things to issue policy); *Allied Prop. & Cas. Ins. Co. v. Good*, 938 N.E.2d 227 (Ind. Ct. App. 2010) (finding a question regarding whether coverage was ever denied, canceled, or non-renewed referred to any policy the insured had previously applied for, and so, the insured's answer "no" despite a previous cancellation constituted a material misrepresentation). This conclusion is confirmed by an affidavit of Sunny Lee, senior underwriter at KBIC, stating that "had KBIC been aware that Guard refused to insure [the Debtor] due to its poor financial condition, that, combined with the bankruptcy, would have resulted in KBIC rejecting the Acord application." Def.'s Mot. for Summ. J., ECF No. 26, Lee Aff., ¶18. The Court also finds that the existence of the tax lien against the Debtor's Property was relevant to the Debtor's financial condition and therefore material to KBIC's decision to write the Policy.

***Can the prior denial/non-renewal of insurance coverage form the basis for rescission if not mentioned in the Notice of Rescission?***

The Plaintiffs argue that the alleged misrepresentations based on prior denials and non-renewals cannot be used as bases to deny coverage because they were not mentioned in the Notice of Rescission. Pls.' Suppl. Mem. of Law in Further Supp. of Mot. for Summ. J., ECF No. 35, ¶16.[6] In this regard, Plaintiffs cite caselaw setting the standard for the timing and content of a notice of disclaimer of insurance coverage. *See, e.g.*, *Colombo v. Merchants Ins. Grp.*, 957 N.Y.S.2d 634 (Sup. Ct. 2010) ("A notice of disclaimer 'must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated' and

---

[6] The Debtor argued for the first time in oral argument that Mr. Savva did not know about the prior coverage denials, only Prodromou did. However, even if this is true, the argument fails because Prodromou was his agent, and the Debtor is bound by his misrepresentation. *See Precision Augo Accessories, Inc. v. Utica First Ins. Co.*, 859 N.Y.S.2d 799, 802-03 (App. Div. 4th Dep't 2008).

14

'an insurer's justification for denying coverage is strictly limited to the ground stated in the notice of disclaimer.'").

The Court finds that the caselaw cited by Plaintiffs in this regard is inapposite in the context of a notice of rescission, as opposed to a notice of disclaimer. As such, the failure to mention the misrepresentation in Question 6 in the Notice of Rescission is not fatal to a rescission on that basis. The Notice of Rescission states: "This letter is not intended to be an exhaustive listing of all of the grounds for rescission. Nothing herein precludes KBIC from asserting any right or ground available under the Policies or in law or equity as a basis for asserting that coverage does not exist for the Loss." Pls.' Mot. for Summ. J., ECF No. 27, Ex. 8. More importantly, however, KBIC did not learn of the prior non-renewals of coverage until Prodromou testified at his deposition on July 16, 2021, that some of the Debtor's policies prior to KBIC were non-renewed. Def.'s Mot. for Summ. J., ECF No. 26, Def.'s Statement of Undisputed Material Facts, at 11. After learning this, KBIC issued subpoenas to the Debtor's prior carriers and companies with which the Debtor applied for insurance. Def.'s Mot. for Summ. J., ECF No. 26, Exs. 9-10. It was only in discovery that KBIC learned of this additional basis to rescind the Policy, and therefore, failure to include it in the Notice of Rescission is excused.

## CONCLUSION

For the reasons set forth above, KBIC's Motion for Summary Judgment is granted, and Plaintiffs' Motion for Summary Judgment is denied. KBIC is directed to draft a proposed order resolving the motion and cross-motion consistent with this Decision and settle the proposed order on notice to the Debtor and TD Bank pursuant to E.D.N.Y. LBR 9072-1(a).



Dated: Central Islip, New York
September 21, 2023

Robert E. Grossman
United States Bankruptcy Judge